IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROBERT PETROVSKY,

             Plaintiff,

v.                        //   CIVIL ACTION NO. 1:16CV44
                                (Judge Keeley)

UNITED STATES ATTORNEY GENERAL,
Dept. of Justice - Bureau of Prisons,
             Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113], AND DISMISSING THE CASE WITH PREJUDICE

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Back Pay Act, 5 U.S.C. § 5596. Pending before the Court are cross motions for summary judgment filed by the plaintiff, Robert Petrovsky ("Petrovsky"), and the defendant, United States Attorney General, Department of Justice, Bureau of Prisons ("BOP"). For the reasons that follow, the Court **DENIES** Petrovsky's motion (Dkt. No. 113) and **GRANTS** the BOP's motion (Dkt. No. 110).

## I. BACKGROUND

### A.    Factual Background

Petrovsky is an employee of the Federal Bureau of Prisons at a Federal Correctional Institute in Gilmer, West Virginia ("FCI-Gilmer"). While a Lieutenant at FCI-Gilmer, Petrovsky served as the designated representative for co-worker Deborah Rankin ("Rankin")

1

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113], AND DISMISSING THE CASE WITH PREJUDICE**

during her Equal Employment Opportunity Commission ("EEOC") grievance. Petrovsky alleges that, following his representation of Rankin, he was subjected to "several adverse employment actions which constituted retaliation" (Dkt. No. 1 at 13). Specifically, Petrovsky alleges that, beginning in October 2010, FCI-Gilmer Warden Kuma Deboo ("Warden Deboo") and Assistant Warden William Odom ("AW Odom") retaliated against him for his involvement in Rankin's grievance process. In his complaint, Petrovsky describes numerous incidents of alleged retaliation.

1. **Verbal Confrontation**

Petrovsky first alleges that AW Odom retaliated against him by "permitting" another FCI-Gilmer employee to "verbally attack" him (Dkt. No. 1 at 4). On October 21, 2010, Petrovsky, then a GS-11 Lieutenant, entered the Warden's conference room for a scheduled meeting with FCI-Gilmer staff and visitors, including AW Odom (Dkt. Nos. 111-1 at 11; 111-2 at 1). Before the meeting began, Petrovsky's co-worker, Lieutenant Matthew Whinnery ("Whinnery"), entered the room and began questioning Petrovsky about an out-of-work event and certain emails exchanged among FCI-Gilmer employees. Id.

The argument apparently culminated with Whinnery referencing

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

Petrovsky's assistance to other employees regarding their EEO complaints and grievances (Dkt. No. 111-2). After Whinnery commented on Petrovsky's involvement in the grievance process, but before Petrovsky could respond to that comment, AW Odom intervened, stating "not here, that is not the time nor place" for such a discussion (Dkt. Nos. 111-1 at 11; 111-2 at 1). After the meeting, AW Odom verbally reprimanded Whinnery for his behavior (Dkt. No. 111-1 at 36-36, 127).

### 2. Annual Performance Evaluation

Petrovsky next alleges that AW Odom retaliated against him by "lowering" his annual evaluation rating, which Petrovsky claims had been issued to him by his immediate supervisor, Captain Vicky Dupuis ("Captain Dupuis") (Dkt. No. 1 at 5). Notably, employee performance ratings are subject to BOP Program Statement 3000.03 (the "Program Statement"), which sets forth a division of responsibilities regarding employee evaluation (Dkt. No. 111-5).

The Program Statement provides that the "Rating Official" (here, Captain Dupuis) is an employee's immediate supervisor and is responsible for "maintaining the employee's performance log, conducting progress reviews and completing the annual performance rating in accordance with the procedures" in the Program Statement.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

Id. The "Reviewing Official" (here, AW Odom) is the Rating Official's supervisor and is responsible for "assigning an overall rating and approving or adjusting individual element ratings." Id. The Reviewing Official further "determine[s] whether recommendations for outstanding performance ratings will be forwarded to the approving official." Id. The "Approving Official" (here, Warden Deboo) is responsible for approving "outstanding" overall performance ratings. If the Approving Official approves the outstanding rating, the Rating Official must "also recommend the granting of additional recognition in the form of a cash or non-cash award or a quality step increase." Id.

Pursuant to the Program Statement, Captain Dupuis completed Petrovsky's performance evaluation for the employment period October 2009 through September 2010. Captain Dupuis assigned ratings on three elements of Petrovsky's performance, marking one element as "Excellent" and two as "Outstanding." AW Odom reviewed the evaluation and ultimately assigned Petrovsky an "Excellent" overall performance rating. Thereafter, Captain Dupuis amended one of her ratings, changing the mark for "People/Workforce & Communication/Teamwork" from "Outstanding" to "Excellent," and initialed the change. Petrovsky received the maximum number of

4

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

points possible for an overall rating of "Excellent" (Dkt. No. 111-4).

### 3.    Shift Change

Petrovsky also alleges that AW Odom retaliated against him by directing Captain Dupuis to assign Petrovsky to the "evening watch" (Dkt. No. 1 at 5). On November 5, 2010, Petrovsky and the two other Lieutenants then-assigned to the day shift were reassigned to the evening shift at AW Odom's direction (Dkt. No. 111-15 at 213-14). Petrovsky ultimately did not work the evening watch, however, because he traded shifts with another Lieutenant to remain on day watch (Dkt. Nos. 111-3 at 113, 111-6 at 168).

### 4.    Demotion to Counselor

Petrovsky next asserts that his decision to apply for, and accept, a GS-9 Counselor position constitutes a constructive demotion from his position as a GS-11 Lieutenant. In early 2011, Petrovsky applied for a vacant position as a Counselor at FCI-Gilmer (Dkt. No. 111-13 at 36-37). Upon review of the applicants, Warden Deboo and AW Odom selected Petrovsky for the vacancy and offered it to him in March of 2011. Petrovsky accepted the position on March 9, 2011, and began working as a Counselor shortly

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

thereafter.

### 5.   Non-Selections for Vacancies

Finally, Petrovsky alleges retaliatory non-selection for three BOP vacancies at the GS-11 (Lieutenant) or GS-12 (Unit Manager) levels. Petrovsky points to the following three instances where he applied but was not selected for the position:

1.   On September 16, 2011, he was not selected for a GS-11 Lieutenant vacancy at the Federal Correctional Institute in Elkton, Ohio ("FCI-Elton");

2.   On August 6, 2012, he was not selected for a GS-12 Unit Manager vacancy at FCI-Gilmer; and

3.   On October 12, 2012, he was not selected for a GS-12 Unit Manager vacancy at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington").

### B.   Procedural Background

Based on the alleged retaliation by AW Odom and Warden Deboo, Petrovsky filed his own EEOC complaint, claiming: (1) He had been subject to a verbal attack, which was allowed by AW Odom; (2) Warden Deboo had allowed AW Odom to retaliate against him; (3) AW Odom had lowered his outstanding annual evaluation; (4) He had been

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

removed from day watch and placed on evening watch; and (5) He had been demoted from the position of Lieutenant and immediately moved.

Petrovsky appeared _pro se_ throughout his administrative hearings and appeal. During the pendency of his case before the Administrative Judge ("AJ"), Petrovsky twice moved to amend his complaint to add claims of non-selection. First, he added a claim that he had been passed over for the Unit Manager positions at FCI-Gilmer and FMC-Lexington. He next added a claim that he had been passed over for the Lieutenant's position at FCI-Elkton. The AJ, however, did not add these claims to his complaint, and they were never addressed during Petrovsky's EEOC case.

According to the complaint, the agency representative misrepresented Petrovsky's position as to his constructive demotion claim, resulting in his erroneous stipulation that he had accepted the lower position voluntarily, rather than as a result of retaliation. Consequently, the AJ never addressed his constructive demotion claim. Ultimately, the AJ ruled against Petrovsky, and he timely appealed to the EEOC's Office of Federal Operations ("OFO").

On appeal, the OFO reversed the AJ's ruling, finding that the BOP had retaliated against Petrovsky. Specifically, the OFO determined that:

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

1. The verbal attacks were likely to deter an employee from engaging in EEO activity, and therefore, constituted per se retaliation;

2. The lower annual evaluation was retaliatory;

3. The shift change was retaliatory, but Petrovsky was able to switch with another employee and thus did not work the night shift; and

4. Because Petrovsky had stipulated that he voluntarily had accepted the lower grade position, it was not "really an issue" in the case.

The OFO did not address Petrovsky's non-selection claims. The BOP moved for reconsideration, which the OFO denied in its final decision dated December 23, 2015.

Petrovsky claims that the BOP has not complied with the OFO rulings, and furthermore, that he is entitled to have his constructive demotion claim heard by this Court because the AJ never addressed it. On March 21, 2016, Petrovsky filed his complaint with this Court, asserting causes of action for retaliation under Title VII of the Civil Rights Act of 1964, and for back pay under the Back Pay Act (Dkt. No. 1).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the BOP

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

moved to dismiss the constructive demotion and non-selection claims contained in Petrovsky's complaint (Dkt. No. 55). Following briefing on several issues, including the constructive demotion claim, the Court concluded that the AJ had erred in not hearing Petrovsky's constructive demotion claim and denied the BOP's motion to dismiss that claim (Dkt. No. 103). It further concluded that Petrovsky's non-selection claims, while unexhausted, reasonably related to his underlying allegation of retaliation by the BOP and, therefore, could be heard by this Court (Dkt. No. 109).

Petrovsky has now moved for summary judgment on his annual evaluation, constructive demotion, and non-selection claims (Dkt. No. 113). The government has moved for summary judgment on all claims (Dkt. No. 111). The motions are fully briefed and ripe for disposition.

## II. STANDARDS OF REVIEW

### A.   De Novo Review

District courts review _de novo_ Title VII suits brought after a final administrative disposition. <u>Chandler v. Roudebush</u>, 425 U.S. 840 (1976). Therefore, a district court "is not bound by the results of the administrative process . . . ." <u>Morris v. Rumsfeld</u>,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

420 F.3d 287, 294 (3rd Cir. 2005).

**B.    Summary Judgment**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

A court "must take special care" when considering a summary judgment motion in an employment discrimination case because the employer's "motive is often the critical issue." Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996). Nevertheless, summary judgment remains an appropriate disposition when the plaintiff is unable to prevail on his claims as a matter of law. Beall, 130 F.3d at 619; Evans, 80 F.3d at 958–59.

## III. DISCUSSION

Title VII of the Civil Rights Act prohibits discrimination against "any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Federal agencies are prohibited from retaliating against an employee who opposes "any practice made unlawful by Title VII of the Civil Rights Act (Title VII) . . . or for participating in any stage of administrative or judicial proceedings under those

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

statutes. 29 C.F.R. § 1614.101(b); see also 42 U.S.C. § 2000e-3(a).

## A.   Discrete Acts of Retaliation

### 1.   Prima Facie Formulation and Burden-Shifting Framework

Discrimination claims brought under Title VII are governed by the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). In order to set forth a prima facie case of impermissible retaliatory discrimination under Title VII, a plaintiff must establish the following: (1) that he engaged in protected activity; (2) that his employer took an adverse action against him; and (3) that a causal relationship existed between the protected activity and the adverse action. Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015).

Under McDonnell-Douglas and its progeny, once the plaintiff establishes a prima facie case, the burden shifts to the employer to advance a non-discriminatory reason for the adverse action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). After the employer explains its decision, the employee may rebut the employer's legitimate, non-discriminatory reason. The burden then shifts back to the plaintiff to prove that the facially legitimate

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113], AND DISMISSING THE CASE WITH PREJUDICE**

reason given by the employer for the employment decision was merely a pretext for a retaliatory motive. See id. at 507-08; see also Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000).

### 2. Analysis

Under the McDonnell-Douglas framework, the first step in the Court's analysis is to determine whether Petrovsky has sufficient prima facie evidence of retaliation to survive summary judgment. Here, he has clearly established the first element of his claims; he served as his co-worker's designated EEOC representative, and accordingly, engaged in protected activity. At issue is the second prong of Petrovsky's prima facie case, whether the BOP took an adverse action against him.

An adverse action is a discriminatory act which "adversely affect[s] 'the terms, conditions, or benefits' of the plaintiff's employment." Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001) (quoting Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 243 (4th Cir. 1997)). Notably, the action must be "materially adverse" because "it is important to separate significant from trivial harms." Burlington Northern & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

Indeed, the Fourth Circuit has observed that establishing an

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

adverse employment action "is still a heavy burden for the plaintiff: the alleged adverse action must be *material*." <u>Csicsmann v. Sallada</u>, 211 F. App'x 163, 168 (4th Cir. 2006) (emphasis in original) (citing <u>Burlington</u>, 548 U.S. at 68). A "materially adverse" action for purposes of a retaliation claim is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." <u>Burlington</u>, 548 U.S. at 57.

Here, the BOP contends that Petrovsky has failed to establish that it took any adverse action against him. Petrovsky, however, asserts that the following three instances constitute materially adverse actions under Title VII: (1) AW Odom's "permitting" of Whinnery's verbal attack; (2) AW Odom's "lowering" of Petrovsky's annual performance evaluation; and (3) AW Odom's directive that Petrovsky's supervisor, Captain Dupuis, place him on evening watch.

### a.    Verbal Confrontation

Petrovsky asserts that, in October 2010, AW Odom "permitted" Lieutenant Whinnery to verbally attack him in the presence of FCI-Gilmer staff and visitors. Because AW Odom stopped the argument and, allegedly, did not allow Petrovsky to "defend [him]self," Petrovsky contends that AW Odom's interference was a materially

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

adverse action sufficient to make out a prima facie case of retaliation (Dkt. No. 111-3 at 98-99).

In assessing such a claim, Burlington emphasizes that "[c]ontext matters," and that "the significance of any given act of retaliation will often depend upon the particular circumstances." Burlington, 548 U.S. at 69. Accordingly, "[a]n employer's words and other actions must be considered in context to determine whether they would 'dissuade a reasonable worker' from filing a claim and thus result in actionable retaliation." Gaujacq v. EDF, Inc., 601 F.3d 565, 578 (D.C. Cir. 2010) (citing Burlington, 548 U.S. at 57).

In the context of this case, a reasonable worker in Petrovsky's position would not have taken AW Odom's brief and minimal involvement in Petrovsky's altercation with Whinnery as an act or threat of retaliation. According even to Petrovsky, AW Odom's participation in the discussion was limited to two statements: (1) "not here, this is not the place," in response to Petrovsky's alleged attempt to "defend" himself from Whinnery's comments; and (2) "not here," in response to Whinnery's ongoing attempt to engage Petrovsky (Dkt. Nos. 111-2 at 2; 111-3). In the "particular circumstances" of this case, which include the fact that Petrovsky, Whinnery and AW Odom were in the presence of

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113], AND DISMISSING THE CASE WITH PREJUDICE**

several other FCI-Gilmer employees and visitors immediately prior to the start of a meeting in the Warden's office, no reasonable employee could have construed AW Odom's conduct as an unlawful retaliatory act or threat. Burlington, 548 U.S. at 69.

Moreover, mere hostility from a co-worker is not an adverse employment action. See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by coworkers . . . are not actionable"). As the Supreme Court observed in Burlington, "petty slights and minor annoyances . . . often take place at work" but do not constitute actionable conduct under Title VII. Burlington, 548 U.S. at 57 (observing that Title VII "does not set forth 'a general civility code for the American workplace'") (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)).

Other courts have found that isolated verbal statements, even those that are threatening or made by supervisors, as opposed to mere co-workers, do not constitute adverse employment actions. See, e.g., Guajacq, 601 F.3d at 578 (finding that an executive's statement, "Your career is dead ... if you file the [discrimination] claim" was, in context, "less a threat and more an expression of exasperation over [the plaintiff's] ongoing antics"

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

and thus not an adverse action); Lucas v. Cheney, 821 F. Supp. 374 (D. Md. 1992), aff'd, 991 F.2d 790 (4th Cir. 1993) (holding that a supervisor's verbal and written reprimands to employee, which did not become part of employee's final employment record, were not adverse employment actions).

Accordingly, the Court concludes that AW Odom's involvement in Petrovsky's October 2010 verbal altercation with Whinnery did not constitute a materially adverse action.

**b.   Annual Performance Evaluation**

Petrovsky points next to AW Odom's issuance of an "Excellent" overall performance rating, despite the marks for "Outstanding" performance that had been issued to Petrovsky by Captain Dupuis. The Fourth Circuit has consistently defined an adverse action as "one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Dufau v. Price, 703 F. App'x 164, 166 (4th Cir. 2017) (quoting Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotation marks omitted)). In contrast, a mere "poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

detrimentally alter the terms or conditions of the recipient's employment." Dufau, 703 F. App'x at 166 (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) (citations and internal quotation marks omitted)).

In James, the plaintiff claimed that his annual performance evaluation constituted an adverse employment action because it contained false allegations, which led to the lowering of his performance review from the "excellent" rating that he had received the previous year to a "highly effective" rating. 368 F.3d at 377. The plaintiff further alleged that this lower rating prevented him from being considered for a promotion and denied him opportunities for bigger bonuses. Id.

While acknowledging that a "downgrade of a performance evaluation *could* effect a term, condition, or benefit of employment" if it has a tangible effect on the terms or conditions of employment," Von Gunten v. Maryland, 243 F.3d 858, 867 (4th Cir. 2001) (emphasis in original), the Court found that nothing in the record suggested that the plaintiff's employer had used the performance evaluation as "a basis to detrimentally alter the terms or conditions of [his] employment." James, 368 F.3d at 377 (quoting Spears v. Missouri Dep't of Corr. & Human Res., 210 F.3d 850, 854

18

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

(8th Cir. 2000)). It therefore concluded that the plaintiff's performance evaluation did not constitute an adverse action under Title VII. Id. at 378-79 (observing that "the language of [Title VII] requires the existence of some adverse employment action" to establish a violation, and that "[t]he statute's wording makes clear that Congress did not want the specter of liability to hang over every personnel decision").

Here, Petrovsky has failed to establish that AW Odom's issuance of an "Excellent" overall performance rating constitutes an adverse action. Foremost, Petrovsky did not receive a "poor" performance evaluation, but rather marks indicating that his performance was "Excellent" or "Outstanding" as to individual elements of his job. And, his overall "Excellent" performance rating was an improvement over his prior year's rating of "Fully Satisfactory" (Dkt. Nos. 111-4; 111-8).

Moreover, as in James, Petrovsky has failed to offer any evidence that his performance evaluation had a "tangible effect" on the terms or conditions of his employment. Von Gunten, 243 F.3d at 867. There is nothing in the record to suggest that the BOP used that evaluation "as a basis to detrimentally alter the terms or conditions of" Petrovsky's employment. Rather, Petrovsky's claim

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113], AND DISMISSING THE CASE WITH PREJUDICE**

that his evaluation precluded him from a quality step increase is mere conjecture. <u>James</u>, 368 F.3d at 378. Pursuant to the relevant Program Statement, even if AW Odom had issued Petrovsky an overall "Outstanding" performance rating, and even if Warden Deboo had then approved the rating, the Rating Official would then have "<u>recommend</u>[ed] the granting of additional recognition" to Petrovsky "in the form of a cash <u>or</u> non-cash award <u>or</u> a quality step increase" (Dkt. No. 111-5) (emphasis added).[1]

A BOP employee, however, need not receive an Outstanding evaluation in order to receive "additional" performance-based recognition. Indeed, in September 2010, Petrovsky had received two "Incentive Awards" in recognition of "extra efforts" made (Dkt. Nos. 111-10; 111-11).

Accordingly, the Court concludes that AW Odom's involvement in Petrovsky's annual performance rating did not constitute a materially adverse action under Title VII.

---

[1] Pursuant to the Program Statement, any such recommendation would then be subject to further consideration and review by the Incentive Award Planning and Review Committee, which would then make a recommendation regarding the approval, nature, and/or amount of any such award (Dkt. No. 111-9).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

c.    **Shift Change**

As to Petrovsky's purported November 2010 "shift change" from day watch to evening watch, the fact is that he never actually incurred a shift change. It is undisputed that, because he was able to trade shifts with another Lieutenant, Petrovsky remained on day watch and ultimately never worked the evening watch (Dkt. Nos. 111-3 at 113; 111-6 at 168). Because Petrovsky's shift did not actually change, no "action" took place, much less one that was materially adverse to him. See Burlington, 548 U.S. at 67 ("The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm."). Therefore, Petrovsky cannot establish a prima facie case of retaliation based on AW Odom's scheduling directive.

Further, even if Petrovsky had worked the evening watch, he cannot demonstrate a viable claim that the shift change "adversely affect[ed] the terms, conditions, or benefits of" his employment. Von Gunten, 243 F.3d at 865. Of course,

> a reassignment can "form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999). However, a mere change in an employee's job assignment, even if "less appealing to the employee, ... does not constitute adverse employment action." Booz-Allen, 368 F.3d at 376. "Absent

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

> any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." <u>Id.</u> (internal quotation marks and alteration omitted).

<u>Webster v. Rumsfeld</u>, 156 F. App'x 571, 579 (4th Cir. 2005).

Changes to an employee's work schedule thus are generally not actionable under Title VII. <u>See, e.g.,</u> <u>Edmondson v. Potter</u>, 118 Fed. App'x 726, 729 (4th Cir. 2004) (concluding that employer's denial of plaintiff's request for temporary schedule changes "did not affect a term, condition, or benefit of" her employment, and therefore, was not an adverse employment action); <u>Benningfield v. City of Houston</u>, 157 F.3d 369, 377 (5th Cir. 1998) ("Merely changing [an employee's] hours, without more, does not constitute an adverse employment action").

Here, the reassignment from day watch to evening watch would not have adversely affected the conditions or benefits of Petrovsky's employment. Notably, because Petrovsky's evening watch hours would have been subject to ten percent "Night Differential" pay, the shift change would have entitled him to additional compensation. (Dkt. No. 111-113). And, as Petrovsky effectively conceded in his deposition testimony, a GS-11 Lieutenant assigned

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

to evening watch assumes a position of greater responsibility than one assigned to day watch:

> Q.    . . . [B]ut what is the difference between a GS-9 lieutenant and a GS-11 lieutenant?
>
> A.    The GS-11 lieutenant is the actual shift supervisor, and <u>they're deemed the warden after hours, that they're the decision maker when no higher ranking staff is at the institution</u>, with the exception of the duty officer, but the duty officer is generally floated throughout the week on off shift. They are the shift supervisor.
>
>       The 9 is a lieutenant and a supervisory lieutenant, but it ultimately falls on GS-11 supervisory lieutenant.
>
> Q.    When you say after hours, do you mean evening watch?
>
> A.    After 4:00 p.m. and prior to 7:30, 8 o'clock.

(Dkt. No. 111-12 at 13) (emphasis added).

For these reasons, particularly the fact that Petrovsky never actually worked the evening watch as a result of AW Odom's November 2010 directive, the Court concludes that the purported "shift change" did not constitute a materially adverse action under Title VII.

### d.    Conclusion

Viewing the evidence in the light most favorable to Petrovsky, the Court concludes that he has failed to offer sufficient evidence

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

that the BOP took a materially adverse employment action against him so as to withstand summary judgment. Because Petrovsky has not demonstrated an adverse action, he has failed to establish a prima facie case of retaliation under Title VII. See James, 368 F.3d at 375 (noting that "[r]egardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required") (internal citation and footnote omitted). Accordingly, the Court **GRANTS** the BOP's motion for summary judgment on Petrovsky's first, second, and third claims of alleged retaliation.

### B. Constructive Demotion

Petrovsky next asserts that his decision to apply for, and accept, a GS-9 Counselor position constitutes a constructive demotion from his position as a GS-11 Lieutenant. He contends that he was forced to take a demotion, at least in part, "because of the relation that [he was] incurring from AW Odom and Warden Kuma Deboo" (Dkt. No. 111-3 at 126).

The Fourth Circuit has recognized constructive demotion as a natural extension of constructive discharge. See Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) ("[D]emotion can constitute a

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

constructive discharge, especially where the demotion is essentially a career-ending action or a harbinger of dismissal."). In addition, other courts of appeal, as well as district courts within this Circuit, evaluate constructive demotion claims as they do discharge claims, holding that the same standards apply. See, e.g., Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 717 (8th Cir. 2003); Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 876 (7th Cir. 1999); Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999); Cuffee v. Tidewater Cmty. Coll., 409 F. Supp. 2d 709, 718 (E.D. Va.), aff'd, 194 F. App'x 127 (4th Cir. 2006).

In order to prove a constructive discharge, a plaintiff must at the outset show that his employer "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (citing Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 272 (4th Cir. 2001)). A plaintiff therefore must demonstrate (1) that the employer's actions were deliberate, and (2) that the working conditions were intolerable. Id. (citing Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186-87 (4th Cir. 2004)); Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 244 (4th Cir. 1997)). Based on the record before it, the Court concludes that

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113], AND DISMISSING THE CASE WITH PREJUDICE**

Petrovsky has failed to establish either element.

### 1.   Deliberate Intent

An employer's actions are deliberate only if they "were intended by the employer as an effort to force the plaintiff to quit." <u>Matvia</u>, 259 F.3d at 272. To establish deliberateness, the plaintiff must provide "proof of the employer's specific intent to force [him] to leave." <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th Cir. 1985). This can be demonstrated either "by actual evidence of intent by the employer to drive the employee from the job" or by providing "circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." <u>Johnson v. Shalala</u>, 991 F.2d 126, 131 (4th Cir. 1993). Importantly, the doctrine of constructive discharge "protects an employee 'from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers.'" <u>Carter</u>, 33 F.3d at 459 (quoting <u>Bristow</u>, 770 F.2d at 1255).

Here, Petrovsky has not demonstrated a deliberate intent on the part of AW Odom and Warden Deboo to force him to give up his position as a GS-11 Lieutenant. Notably, it was Petrovsky himself who initiated the events that ultimately led to his demotion. In

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

---

early 2011, Petrovsky submitted an application on "USA Jobs" for a vacant GS-9 Counselor position at FCI-Gilmer (Dkt. No. 111-13 at 36-37). After reviewing all of the submissions, Warden Deboo and AW Odom determined that Petrovsky was the best qualified applicant for the position and selected him to fill the vacancy (Dkt. No. 111-6 at 177). On March 8, 2011, Warden Deboo and AW Odom notified Petrovsky of their decision and offered him the position. The next day, after requesting time to consider his decision, Petrovsky accepted the offer and began working as a Counselor approximately two weeks later.

Petrovsky has no other evidence, either direct or circumstantial, of his employer's "specific intent" to force him to accept the demotion from Lieutenant to Counselor. Bristow, 770 F.2d at 1255. For instance, rather than proving that the Wardens "single[d] out [Petrovksy] for differential treatment," Johnson, 991 F.2d at 131, the evidence is that, in the case of the purported shift change from day watch to evening watch, all three Lieutenants then-assigned to day watch, including not only Petrovsky but also Whinnery, were removed from their posts at the same time (Dkt. No. 111-15 at 213-14).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

### 2.   Intolerable Working Conditions

Even if Petrovsky could establish that the Wardens deliberately intended to force him to accept a demotion, he still cannot show that his working conditions at FCI-Gilmer were objectively intolerable.

"Whether an employment environment is intolerable is determined from the objective perspective of a reasonable person." Heiko, 434 F.3d at 262 (citing Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004)). Notably, "[i]ntolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, even that the employee subjectively felt compelled to resign[;]...[r]ather, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign--that is, whether he would have had no choice but to resign." Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1999) (quoting Bristow, 770 F.2d at 1255)(emphasis added).

Thus, perhaps unsurprisingly, the burden of proving objectively intolerable conditions is a heavy one. The Fourth Circuit has made clear that, in the context of constructive

discharge, "[d]ifficult or unpleasant working conditions" do not qualify as intolerable conditions. Carter, 33 F.3d at 459. In fact, "[e]ven truly awful working conditions may not rise to the level of constructive discharge." Hill v. Verizon Md., Inc., No. RDB-07-3123, 2009 WL 2060088, *13 (D.Md. July 13, 2009); see also Williams, 370 F.3d at 434 (holding that, even if true, plaintiff's allegations that her supervisors "yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back" did not establish the objectively intolerable working conditions necessary to prove constructive discharge).

Here, Petrovsky has not established the intolerable working conditions necessary for his constructive demotion claim to survive summary judgment. By his own admission, Petrovsky "put in for the Counselor position because of the retaliation that [he was] incurring from AW Odom and Warden Kuma Deboo, based upon [his] earlier complaint of what they were doing to retaliate against [him]," specifically "the reduction in [his] evaluations" and "the moving [him] off the post [he] was assigned to by [his] supervisor" (Dkt. No. 111-3 at 116). These circumstances, more fully discussed above, are simply not the kind of intolerable working conditions

that support a claim for constructive demotion or charge. In short, "mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." James, 368 F.3d at 378.

Accordingly, the Court concludes that Petrovsky has failed to establish that AW Odom and Warden Deboo deliberately made his working conditions intolerable for the purpose of forcing him to seek a demotion. Because Petrovsky cannot establish a viable claim of constructive demotion, the Court **DENIES** his motion for summary as to that claim and **GRANTS** the BOP's motion for summary judgment on the same.

## C.   Non-Selection Claims

Finally, Petrovsky alleges three instances of retaliatory non-selection for vacant positions at the GS-11 (Lieutenant) or GS-12 (Unit Manager) levels. The BOP contends that all three of Petrovsky's non-selection claims are time-barred.

It is well settled that "state statutes have repeatedly supplied the periods of limitations for federal causes of action" when the federal legislation made no provision.'" See N. Star Steel

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

Co. v. Thomas, 515 U.S. 29, 34 (quoting Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 703–04). In West Virginia, employment discrimination actions are generally governed by a two-year statute of limitations. See W. Va. Code § 55-2-12 (two-year limitations period for "every personal action for which no limitation is otherwise prescribed"). To determine when the relevant limitations period began, the "proper focus is on the time of the discriminatory act." Chardon v. Fernandez, 454 U.S. 6, 8 (1981).

Here, the causes of action grounded in Petrovsky's non-selections accrued, if at all, on the dates when he was notified of each decision not to hire him: September 16, 2011 (Lieutenant, FCI-Elkton); August 28, 2012 (Unit Manager, FCI-Gilmer); and October 16, 2012 (Unit Manager, FMC-Lexington). Therefore, in the absence of some circumstance that tolled the running of the limitations period, Petrovsky's claims were time barred after September 16, 2013, August 28, 2014, and October 16, 2014, respectively. Petrovsky filed his complaint in this Court on March 23, 2016 (Dkt. No. 1).

Ordinarily, a plaintiff's pursuit of administrative remedies tolls the relevant statute of limitations. The Supreme Court of the

31

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113],
AND DISMISSING THE CASE WITH PREJUDICE**

United States, however, has held that a limitations period does not toll, and thus the statute of limitations continues to run, on a claim that requires no administrative exhaustion while a plaintiff pursues administrative remedies on other claims that do require exhaustion. Johnson v. Ry. Express Agency, Inc., 421 U.S. 454 (1975). As the BOP argues, this is true even where the plaintiff's claims are factually related and involve the same conduct. Id. at 462 (holding that timely filing of employment discrimination charge with EEOC pursuant to Title VII did not toll running of limitation period applicable to action based on same facts instituted under 42 U.S.C. § 1981).

The Fourth Circuit has "declined to extend the limitations periods for discrete acts of discrimination merely because the plaintiff asserts that such discrete acts occurred as part of a policy of discrimination." Holland v. Washington Homes, Inc., 487 F.3d 208, 220 (4th Cir. 2007) (citing Williams, 370 F.3d at 429). At bottom, "discrete discriminatory acts are not actionable if time-barred." Id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).

This Court has previously held that Petrovsky was not required to administratively exhaust his non-selection claims (Dkt. No.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113], AND DISMISSING
THE CASE WITH PREJUDICE**

109). The statute of limitations for those claims therefore continued to run while Petrovsky exhausted his other claims. Consequently, although his non-selection claims were time barred as of September of 2013, and August and October of 2014, Petrovsky did not file his complaint until March of 2016. Therefore, his claims of non-selection being time barred by the applicable statute of limitations, the Court **GRANTS** the BOP's motion for summary judgment as to those claims and **DENIES** Petrovsky's motion for summary judgment on the same.

### IV. CONCLUSION

In summary, for the reasons discussed, the Court:

1.    **GRANTS** the defendant's motion for summary judgment (Dkt. No. 110);

2.    **DENIES** the plaintiff's motion for summary judgment (Dkt. No. 113);

3.    **GRANTS** the plaintiff's motion for leave to file under seal (Dkt. No. 134);

4.    **GRANTS** the plaintiff's motion to amend/correct response (Dkt. No. 135); and

5.    **DISMISSES** this case with **PREJUDICE,** and **ORDERS** that it be

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 110], DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 113], AND DISMISSING
THE CASE WITH PREJUDICE**

stricken from the Court's active docket.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: April 24, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE